HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
ELENA SADOWSKY (Bar No. 302053)
(E-Mail: Elena_Sadowsky@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2644
Facsimile: (213) 894-0081

Attorneys for Defendant
ALBERT JUAN ORTEGA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALBERT JUAN ORTEGA,<br><br>Defendant. | CR No. 10-825-R<br>CV No. 18-4619-TJH<br><br>**DEFENDANT'S SENTENCING POSITION**<br><br>**Sentencing Date: March 25, 2019**<br>**Time: 10:00 a.m.** |

Defendant Albert Juan Ortega, by and through his counsel of record, Deputy Federal Public Defender Elena Sadowsky, hereby submits his position regarding resentencing.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: March 13, 2019         By  */s/ Elena Sadowsky*
                              ELENA SADOWSKY
                              Deputy Federal Public Defender
                              Attorney for Albert Juan Ortega

# TABLE OF CONTENTS

**Page (s)**

I. INTRODUCTION ................................................................................................... 1

II. PROCEDURAL HISTORY .................................................................................. 1

III. THE FIRST STEP ACT ...................................................................................... 2

 A. The First Step Act applies to Mr. Ortega on resentencing. ..................... 2

 B. After the First Step Act, Mr. Ortega is no longer subject to mandatory life imprisonment. ................................................................................... 4

IV. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A) ................................ 5

 A. Overarching Principles for Resentencing ................................................ 5

 B. Rehabilitation .......................................................................................... 6

 C. Mr. Ortega's History and Characteristics ............................................... 8

 D. Nature of the Offense and the Need to Reflect the Seriousness of the Office ..................................................................................................... 10

 E. Deterrence and Public Protection .......................................................... 10

 F. Updated Sentencing Guideline Range .................................................. 11

V. CONCLUSION ................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Dillon v. United States*,
 560 U.S. 817 (2010) ................................................................................................ 5

*Ferrara v. United States*,
 372 F. Supp. 2d 108 (D. Mass. 2005) ..................................................................... 3

*Johnson v. United States*,
 135 S. Ct. 2551 (2015) ............................................................................................ 2

*Kimbrough v. United States*,
 552 U.S. 85 (2007) .................................................................................................. 5

*Krieger v. United States*,
 842 F.3d 490 (7th Cir. 2016) .................................................................................. 2

*Pepper v. United States*,
 562 U.S. 476 (2011) .................................................................................... 1, 4, 5, 7

*Samuels v. United States*,
 No. 08-CR-87, 2013 WL 3422668 (M.D.N.C. July 8, 2013) ................................. 3

*United States v. Atkinson*,
 979 F.2d 1219 (7th Cir.1992) ................................................................................. 2

*United States v. Booker*,
 543 U.S. 220 (2005) ............................................................................................ 3, 5

*United States v. Flanagan*,
 80 F.3d 143 (5th Cir. 1996) .................................................................................... 3

*United States v. Grimes*,
 142 F.3d 1342 (11th Cir. 1998) .............................................................................. 2

*United States v. Handa*,
 122 F.3fd 690, 692 (9th Cir. 1997) ......................................................................... 4

*United States v. Harris*,
 679 F.3d 1179 (9th Cir. 2012) ................................................................................ 5

*United States v. Hinds*,
    713 F.3d 1303 (11th Cir. 2013) ............................................................................. 2, 3

*United States v. Mapuatuli*,
    No. 15-10312, 2019 WL 1076343 (9th Cir. Mar. 7, 2019) ................................ 1, 2, 3

*United States v. Polanco*,
    53 F.3d 893 (8th Cir. 1995) ......................................................................................... 3

*United States v. Thompson*,
    Order, Dkt. # 69 ........................................................................................................... 3

**Statutes**

18 U.S.C. 1201(a)(1) ............................................................................................................ 1

18 U.S.C. § 924(c) ................................................................................................................ 1

18 U.S.C. § 924(c)(1)(A)(i) ................................................................................................ 11

18 U.S.C. § 1201(c) .............................................................................................................. 1

18 U.S.C. § 3553(a) ............................................................................................... 4, 5, 8, 9

18 U.S.C. § 3582(c)(2) ......................................................................................................... 5

21 U.S.C. § 802 .................................................................................................................... 4

21 U.S.C. § 841 .................................................................................................................... 3

21 U.S.C. §§ 841(a)(1) and 841(b)(1) .............................................................................. 1, 3

First Step Act § 401(a)(1) ................................................................................................... 4

First Step Act § 401(a)(2)(A)(ii) ......................................................................................... 4

**Sentencing Guidelines**

U.S.S.G. § 2A4.1 ................................................................................................................ 11

U.S.S.G. § 2A4.1(b)(1) ...................................................................................................... 11

U.S.S.G. § 2A4.1(b)(3) ...................................................................................................... 11

U.S.S.G. § 2D1.1(c)(5) ...................................................................................................... 11

U.S.S.G. § 3D1.4 ................................................................................................................ 11

## I. INTRODUCTION

Albert Juan Ortega comes before this Court for resentencing following the Court's January 30, 2019 order vacating his life sentence. Originally sentenced to life in prison, Mr. Ortega did not have much incentive to rehabilitate. Yet, he did. Over the last eight years, Mr. Ortega has made extraordinary efforts toward rehabilitation. Not only has he participated in over 6,300 hours of educational programming himself, but he has assisted over 80 people receive their G.E.D., drastically increased college course enrollment, and imparted wisdom on those preparing to be released from prison even though he had no release date himself. He has been directly responsible for widespread improvements to the prison educational/rehabilitation system, as well as inspiring and facilitating the rehabilitation of countless peers.

At resentencing, the Court may consider Mr. Ortega's extensive rehabilitation efforts and achievements. *Pepper v. United States*, 562 U.S. 476, 490 (2011). In addition, at resentencing, the Court should apply current law, which includes the First Step Act. *United States v. Mapuatuli*, No. 15-10312, 2019 WL 1076343, at *2 (9th Cir. Mar. 7. 2019) (recognizing that on resentencing "the district court may also consider what effect (if any) the recently enacted First Step Act has on [defendant's] sentence"). After the First Step Act, Mr. Ortega is no longer subject to a mandatory life term. As discussed more thoroughly below, his extensive rehabilitation warrants a below-Guideline sentence and a chance to live a meaningful life in society. Accordingly, the defense respectfully requests a 15-year sentence, which is sufficient but not greater than necessary to achieve the purposes of sentencing.

## II. PROCEDURAL HISTORY

Mr. Ortega was convicted by a jury of: (1) conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c); (2) kidnapping, in violation of 18 U.S.C. 1201(a)(1); (3) possession of a firearm during a crime of violence, in relation to Counts 1 and 2, in violation of 18 U.S.C. § 924(c); (4) conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A); (5)

possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (6) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and (7) possession of a firearm during a drug-trafficking crime, in violation of 18 U.S.C. § 924(c).

On August 22, 2011, this Court sentenced Mr. Ortega to life plus 32 years. More specifically, the Court sentenced Mr. Ortega as follows:

- Count 1, 2, 5 & 6: 360 months concurrent to each other and Count 3
- Count 3: mandatory life pursuant to 21 U.S.C. § 841(b)(1)(A)
- Count 4: 7 years mandatory consecutive pursuant to 18 U.S.C. § 924(c)
- Count 7: 25 years mandatory consecutive pursuant to 18 U.S.C. § 924(c)

Following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), Mr. Ortega filed a motion to vacate, set side, or correct his sentence. He argued that his 924(c) conviction and sentence (Count 4) violated the Constitution because Section 924(c)'s residual clause, which was worded similarly to the residual clause at issue in *Johnson*, was void-for-vagueness. On January 30, 2019, the district court granted his motion, vacated his sentence, and ordered a full resentencing before this Court.

### III. THE FIRST STEP ACT

**A.  The First Step Act applies to Mr. Ortega on resentencing.**

In December 2018, Congress passed and the President signed into law the First Step Act of 2018, which now applies to Mr. Ortega on resentencing.

The "general rule" at any resentencing after direct appeal or collateral review is that the defendant is sentenced under the law in effect at the time of the resentencing. *See, e.g.*, *United States v. Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998) (The "general rule is that a defendant should be sentenced under the law in effect at the time of sentencing."); *United States v. Hinds*, 713 F.3d 1303, 1305 (11th Cir. 2013) ("[T]here is no meaningful difference between an initial sentence and a resentencing" and a change in law applies "in both cases."); *Krieger v. United States*, 842 F.3d 490, 505-06

2

(7th Cir. 2016) (when a sentence is vacated, the district court resentences the defendant "on a clean slate"); *United States v. Atkinson*, 979 F.2d 1219, 1223 (7th Cir.1992) ("While not all aspects of his sentencing were erroneous, the effect of a vacation is to nullify the previously-imposed sentence. [] Therefore, the district court will be writing on a clean slate and may entertain any and all objections, even those not raised at the earlier sentencing.").

The Ninth Circuit has already applied this general rule in the context of the First Step Act. In *United States v. Mapuatuli*, the court vacated a sentence on direct appeal, concluding that the district court erred in applying the categorical approach and classifying defendant's prior conviction as a qualifying predicate conviction for purposes of 21 U.S.C. § 841. *United States v. Mapuatuli*, No. 15-10312, 2019 WL 1076343, at *2 (9th Cir. Mar. 7. 2019). In remanding the case for resentencing, the court noted that "the district court may also consider what effect (if any) the recently enacted First Step Act has on [defendant's] sentence." *Id.* at n.3.

Courts across the country have applied this rule in other contexts, as well. *See, e.g.*, *United States v. Hinds*, 713 F.3d 1303, 1304-05 (11th Cir. 2013) (Fair Sentencing Act applies on resentencing after direct appeal); *United States v. Flanagan*, 80 F.3d 143, 144 (5th Cir. 1996) (safety valve statute, enacted after defendant was first sentenced, applied at resentencing after direct appeal); *United States v. Polanco*, 53 F.3d 893, 898 (8th Cir. 1995) (directing district court to apply new safety valve statute on remand after direct appeal); *United States v. Thompson*, Order, Dkt. # 69, Crim. No. 08-205 (BAH) (D.D.C. June 6, 2016) (amending judgment to resentence movant under the Fair Sentencing Act upon granting § 2255 motion on basis counsel was ineffective in failing to timely inform him of plea offers, *see* Motion, Dkt. #67); *Ferrara v. United States*, 372 F. Supp. 2d 108, 113 (D. Mass. May 13, 2005) (in granting § 2255 motion based on government's failure to disclose exculpatory evidence, stating that "resentencing is governed by the law as it now exists," including the Supreme Court's decision in *Booker*, and the "correct, present Guidelines range"); *Samuels v. United*

*States*, No. 08-CR-87, 2013 WL 3422668, at **1-2 & n.1 (M.D.N.C. July 8, 2013) (vacating sentence under *Dorsey* and noting that *Simmons* would apply on remand in determining whether petitioner is a career offender and whether an § 851 information is invalid).

**B.     After the First Step Act, Mr. Ortega is no longer subject to mandatory life imprisonment.**

In 2011, Mr. Ortega was subject to a mandatory life term for Count 3 under 21 U.S.C. § 841(b)(1)(A). After the First Step Act, Mr. Ortega is no longer subject to a mandatory life imprisonment term. The most obvious reason is that the statute now does not provide for any such sentence. Instead, it mandates a 25-year sentence for a person previously convicted of two or more predicate offenses, called "serious drug felonies." First Step Act § 401(a)(2)(A)(ii). However, Mr. Ortega could not be subject to even that 25-year penalty. The First Step Act defines "serious drug felony" in a substantially more restrictive manner than "felony drug offense," to include only those offenses which carry a maximum term of ten years or more, and then only if the defendant actually served more than twelve months of imprisonment and was released from such term of imprisonment within 15 years of commencement of the instant offense. First Step Act § 401(a)(1) (amending 21 U.S.C. § 802). Mr. Ortega's three prior convictions originally cited by the government − regardless if they satisfied the former definition of "felony drug offense" − do not meet the new definition of "serious drug felony." None of the three prior drug convictions carry the requisite ten year maximum term and, therefore, are not "serious drug felonies." *See* Cal. H&S § 11370.1(a) (requiring a one year maximum sentence); Cal. H&S § 11357(b) (requiring no more than 6 months imprisonment); Cal. H&S § 11379(a) (requiring a sentence of two, three, or four years).

Thus, after the First Step Act, Mr. Ortega is not subject to a mandatory life or a 25-year sentence. Defense counsel has included a discussion of the 18 U.S.C. § 3553(a) factors and the updated Sentencing Calculation below.

# IV. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

## A.     Overarching Principles for Resentencing

At a resentencing following Section 2255 relief, the sentencing judge is not bound by the previous sentence. *United States v. Handa*, 122 F.3fd 690, 692 (9th Cir. 1997). Moreover, a resentencing following Section 2255 relief is a plenary sentencing hearing, where the defendant's rights mirror his rights at the original sentencing. *See Pepper v. United States*, 562 U.S. 476, 490 (2011) (defendant is entitled to a sentencing framework that includes consideration of all § 3553(a) factors at both the initial sentence and at any subsequent resentencing after a sentence has been set aside on appeal); *Dillon v. United States*, 560 U.S. 817, 826-27 (2010) (distinguishing between "sentence-modification proceedings" under 18 U.S.C. § 3582(c)(2), which "do not implicate the interests identified in *Booker*, and "plenary resentencing proceedings," which do). In addition, at resentencing, the Court will have the opportunity to consider Mr. Ortega's efforts to rehabilitate himself during his eight years of incarceration. *Pepper*, 562 U.S. at 490 (holding that upon vacation of an original sentence, "a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range).

In determining the appropriate sentence, the Court must consider the statutory sentencing factors set forth in 18 U.S.C. § 3553, including, among other factors, the nature and circumstances of the offense; the history and characteristics of the offender; the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence; the applicable sentencing range under the advisory sentencing guidelines; and the need to avoid unwarranted sentencing disparity. 18 U.S.C. § 3553(a); *United States v. Booker*, 543 U.S. 220 (2005).

The "overarching provision" of 18 U.S.C. § 3553(a) is that the sentencing court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in [§ 3553(a)(2)]." *Kimbrough v. United States*, 552

5

U.S. 85, 101 (2007). "[S]entencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular history and has committed a particular crime." *United States v. Harris*, 679 F.3d 1179, 1183 (9th Cir. 2012). The Supreme Court requires individualized sentencing, affirming "the principle that 'the punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)).

**B.  Rehabilitation**

Mr. Ortega's dedication to education and self-improvement is nothing short of extraordinary. His rehabilitation efforts and accomplishments in the last eight years are too many to list, but here are some highlights:

- 6,337 total hours of programing and classes ranging from public speaking, parenting, computer skills, money management, victim awareness, drug abuse education, and commercial driving
- 4,000-hour Teacher Aide Certificate, which took him over three years to complete
- Three AA degrees in American History, Arts & Humanities, and Human Behavioral Science, with a fourth degree in Business almost complete
- 3.65 GPA
- 2013 Tutor of the Year Award
- 2014 Employee of the Year Award
- 2-time participant in the six-month non-residential drug abuse program, first as a student and then as an instructor

*See* Ex. A (Letter from Albert Ortega), E (Transcript and Certificates).

What stands out, though, is that Mr. Ortega's dedication to higher-learning and rehabilitation was not limited to or motivated by his own self-interest. He has generously shared his talents and time with countless inmates. In doing so, Mr. Ortega

has produced real results on a micro and macro level, helping countless individuals better themselves and improving the prison educational system overall.

Mr. Ortega joined the prison education program soon after entering prison. He started off as tutor and worked his way up the program. He tutored students studying for their G.E.D, including special needs students. *See* Ex. A. He estimates that he assisted over 80 people study for and obtain their G.E.D. thereby helping dozens of his peers unlock various opportunities within prison, as well as in society.

After tutoring, Mr. Ortega became a clerk and took on more responsibility in planning, organizing, and improving the educational programs. According to Mr. Ortega's former supervisor and teacher at USP Atwater, Mr. Ortega is directly responsible for a "drastic" increase in enrollment for college correspondence classes (also known as Adult Continuing Education (ACE)). *See* Ex. B (Letter from V. Davis). When Mr. Ortega started working with the ACE program, there were only three people enrolled in college course. By the time he left, there were around 30. This is a direct result of Mr. Ortega's initiative and hard work. He began teaching others how to fill out the ACE enrollment paperwork and order requisite books. He then became involved in creating flyers to advertise the courses and boost attendance. He then taught the classes himself, creating over 95 curriculums. He also kept the program organized by recording attendance and distributing signed certificates of completion. He ensured that the program could continue and expand by training new clerks to take over his duties. In their course feedback, the students specifically "expressed their thanks to [Mr.] Ortega." And his supervisor noticed that "[m]any students were able to rebuild confidence and self-worth because of [Mr.] Ortega's motivation." Ex. B. It's not surprise that he won the Tutor of the Year and Employee of the Year awards in back-to-back years.

Although he had no release date of his own, he took initiative to improve the Release Preparation Program (RPP) by incorporating new technology and organizing the mock job fair. *See* Ex. B. In addition to teaching resume and computer skills, he

7

openly shared his own experience of being released and then returned to prison to help others succeed upon their release. *Id*. Mr. Ortega also assisted those inmates who were eligible to apply for clemency. He helped them outline their rehabilitation efforts for their application and advised them on the best classes and programing to take. He did not let his own life sentence deter him from making a difference in the lives of others.

In 2015, Mr. Ortega left the education program to become a Production and Training Clerk at a UNICOR recycling factory. In this role, he monitors materials that come to the factory, estimates the profits, and trains new employees. Mr. Ortega is far from done with his education, though. He plans to study for and earn his Master's Degree in Art and Humanities. He wants to specialize in public speaking and human behavior. This is a special interest of his. He has noticed that "when people come to prison, they forget how to speak and interact." He wants to study and understand this phenomenon, so that he can help "give them a voice."

The goals that Mr. Ortega has sent for himself and the promises he will make to this Court should be taken seriously. With his actions, he has demonstrated a true commitment to rehabilitation and did so without ever knowing if he would have an opportunity to reenter society.

### C. Mr. Ortega's History and Characteristics

Mr. Ortega's personal history was never presented to the Court. He presents it now to enable the Court to fully consider the Section 3553(a) factors.

Mr. Ortega is the oldest of two sons born to Juan Ortega and Elena Ortiz. In Mr. Ortega's words, his parents "did their best." They were the first of their families to emigrate from Mexico to the United States. Juan worked as a janitor at Armco Steel and Elena worked as a housekeeper. As a result of Juan's alcoholism, the family experienced a lot of dysfunction: Mr. Ortega remembers his dad often being drunk or hungover and engaging in bizarre behavior.

The family lived in the Wilmington and Carson areas in rough neighborhoods. The kids in the neighborhood were left unsupervised while the adults worked long

hours; there were no afterschool programs, no help with school work, and no investment in their futures. If you asked any kid of the street what he wanted to be when he grew up, he wouldn't have a clue.

As gangs took over the neighborhood, "traumatic experiences became the norm." You had two choices as a kid going to school: you could walk to school or you could run to school. If you chose the former, you were at great risk of being shot or getting beat up. Mr. Ortega was about 12 years old when he first witnessed gang violence. By the age of 15, he was attending the funerals of friends on a regular basis. He estimates that he lost about 20 close friends to gun violence.

In this gang incubator, Mr. Ortega dropped out of high school and started hanging out with the wrong crowd. But things really "went haywire" when he became addicted to methamphetamine. Drugs became his "downfall." Ex. A. At one of the height of his addiction, from 2002-2003, Mr. Ortega picked up four convictions (and ten criminal history category points) in a seven-month period, during which he was using methamphetamine the whole time. In his own words, "he just couldn't stop." While incarcerated, Mr. Ortega has twice participated in the six-month non-residential drug abuse program. He first participated as a student and then as a teacher. He has also attended NA classes. *See* Ex. E.

Despite his drug addiction, Mr. Ortega was able to find stable and meaningful employment. After his release from prison and drug treatment in 2008, he connected with Homeboy Industries. He worked with Homeboy Industries in their solar panel project, working his way up and becoming an instructor in the program. He eventually joined the local Laborers' Union. He still pays his union dues, hoping one day that he can return.

When Mr. Ortega was arrested for the instant crime, his daughters were just 16, 14, and 12 years old. They were angry at him for a long time after he was convicted. Slowly, he has rebuilt his relationship with them. When their mother died four years ago, Mr. Ortega made it a priority to be as much of a parent as he could. His oldest

daughter Vanessa writes "during this time, he showed us so much love and support," he "called every day, sent us encouraging letters and just always reminded us that our mom holds a special place in his heart." Ex. C (Letter from Vanessa Ortega). Mr. Ortega has an extensive support system. He maintains regular contact with his mother, brother, and his daughters, who are now all adults. He also has the support of "aunts, uncles, and cousins" who are "ready to come together as one to be there for" him. *Id.* His brother, Frank Ortega, is committed to being there for him, too. Ex D (Letter from Frank Ortega).

### D. The Nature of the Offense and the Need to Reflect the Seriousness of the Offense

The defense does not deny that the offenses here are serious. But the offense was motivated by Mr. Ortega's addiction to methamphetamine, a problem that he has addressed while in custody by participating and then teaching drug abuse classes. The defense believes that Sentencing Guidelines range is disproportionately harsh when considering all of the Section 3553(a) factors, especially Mr. Ortega's extensive rehabilitation. A 15-year sentence is a length sentence. It will mean that Mr. Ortega will spend a quarter of his life incarcerated for these offenses. Thus, a 15-year sentence is sufficient to punish him for his actions.  But a15-year sentence would also allow Mr. Ortega a second chance at life, which is appropriate given his rehabilitation.

### E. Deterrence and Public Protection

In Mr. Ortega's case, a 15-year sentence is sufficient to accomplish the goals of deterrence and public protection. Mr. Ortega is overwhelmed, at times, by the shame and regret he feels for his past actions, especially how they have impacted his family. He has expressed that remorse to his family. His brother, Frank Ortega, writes that Mr. Ortega always asks for "forgiveness" for his actions that have taken him away from his family. Ex. D. Mr. Ortega has also taken a Victim Impact class, where he learned "that there are many types of victims." Ex. A. He understands and appreciates the harm that

10

he has caused and, as discussed, he has attempted to make amends for that harm by helping others.

Moreover, as demonstrated by Mr. Ortega's extensive rehabilitation efforts, the public no longer needs protection from him. In fact, the public would benefit from his reentry into society. He has many talents to share and a willingness to share them. In addition, he has an extensive support system and plenty of skills, including training and connections in the booming solar panel industry. His support system and ability to find steady employment mitigate the risk of recidivism.

While Mr. Ortega was considered to be in Criminal History Category VI, that category captures more of a snap shot of his a particularly terrible point in his life. Mr. Ortega received ten criminal history category points in a seven-month period when his methamphetamine addiction was at its apex. His Criminal History Category is therefore more indicative of Mr. Ortega's addiction and less indicative of his character. And now, after multiple drug programs and classes, extensive rehabilitation, and a supportive family, he is unlikely to relapse or recidivate.

## F.     Updated Sentencing Guideline Range

The defense calculates the advisory Sentencing Guidelines as follows for Counts 1-3, 5-6:

<u>Group 1: Counts 1 & 2</u>

| | |
|---|---|
| Base Offense Level: 32 | U.S.S.G. § 2A4.1 |
| +6 for ransom | U.S.S.G. § 2A4.1(b)(1) |
| +2 for dangerous weapon | U.S.S.G. § 2A4.1(b)(3) |
| Total Offense Level: 40 | |

<u>Group 2: Counts 3, 5 & 6</u>

| | |
|---|---|
| Base Offense Level: 30 | U.S.S.G. § 2D1.1(c)(5) - Drug Quantity Table |
| Total Offense Level: 30 | |

No Multiple Count Adjustment applies under Chapter 3, Part D because Group 2 is more than 8 levels less serious than Group 1. *See* U.S.S.G. § 3D1.4. Thus, his total offense level is 40 -- a one-level decrease from his original total offense level in 2011.

In addition to the above advisory Guideline range, Mr. Ortega is subject to a mandatory consecutive 5-year sentence for Count 7. *See* 18 U.S.C. § 924(c)(1)(A)(i).

For the reasons stated above, the defense believes that a sentence in this range is far greater than necessary to accomplish the goals of sentencing.

## V. CONCLUSION

For all of these reasons, the defense respectfully requests a total sentence of 15 years. Such a sentence is sufficient but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: March 13, 2019

By  */s/ Elena Sadowsky*
ELENA SADOWSKY
Deputy Federal Public Defender
Attorney for Albert Juan Ortega